**FOR PUBLICATION**

ATTORNEYS FOR APPELLANT:

**J. KEVIN KING**
**PETER CAMPBELL KING**
Cline King & King, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEES:

**MARC T. QUIGLEY**
**LIBBY Y. GOODKNIGHT**
**CATHERINE E. SABATINE**
Krieg DeVault, LLP
Indianapolis, Indiana

**FILED**

May 22 2013, 9:20 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LYDIA LANNI, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1208-CT-392 |
| | ) | |
| NATIONAL COLLEGIATE ATHLETIC | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-1202-CT-5179

**May 22, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Plaintiff, Lydia Lanni (Lanni), appeals the trial court's grant of Appellees-Respondents', the National Collegiate Athletic Association, *et al.*[1] (NCAA), combined alternative Motion to Dismiss Lanni's Complaint and/or Motion for Summary Judgment.

We reverse in part, affirm in part, and remand for further proceedings.[2]

ISSUES

Lanni raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred when it converted the NCAA's combined alternative Motion to Dismiss Lanni's Complaint and/or Motion for Summary Judgment into a motion for summary judgment; and

(2) Whether the trial court abused its discretion by denying Lanni's motion to strike an affidavit designated by the NCAA.

FACTS AND PROCEDURAL HISTORY

This cause comes before us as a result of a civil tort action filed by Lanni against the NCAA, the University of Notre Dame Du Lac (Notre Dame), and the United States Fencing Association (USFA). Lanni, a spectator, was struck in the left eye by a fencing sabre causing a severe injury while at an allegedly NCAA sanctioned fencing match at

---

[1] This appeal strictly concerns a procedural question instigated by the NCAA. The other parties in this case, the University of Notre Dame Du Lac and the United States Fencing Association, Inc., are not part of this appeal.

[2] We held oral argument in this cause on May 1, 2013 at the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel for their eloquent advocacy.

Notre Dame. On February 8, 2012, Lanni filed her Complaint, alleging that the NCAA was negligent by (1) failing to undertake a hazard and risk analysis prior to commencing the fencing match, (2) failing to select and/or supervise qualified officials, and (3) failing to supervise the competition to insure hazards and risks were consistently monitored to prevent injuries.

On April 3, 2012, after requesting two extensions of time to file a responsive pleading, the NCAA filed its Motion to Dismiss Lanni's Complaint and/or Motion for Summary Judgment (the Motion). In its Motion, the NCAA asserted that Lanni's Complaint should be dismissed pursuant to Indiana Trial Rule 12(B)(6) and "additionally," it was entitled to summary judgment as a matter of law pursuant to Indiana Trial Rule 56 because the undisputed evidence established that the NCAA was not negligent or at fault for Lanni's injuries. (Appellant's App. p. 18). Attached to the Motion was the NCAA's brief in support and the affidavit of Kelly Whitaker Shaul (Shaul), the NCAA's Fencing Championships Manager.

On April 20, 2012, Lanni filed a motion for stay of briefing with respect to NCAA's Motion, requesting, in pertinent part:

> 4. As litigation has just commenced, discovery is in the early stages. [Lanni] is in the process of drafting and issuing discovery to all Defendants, which is expected to be sent out within the month.
> 5. Until the appointment of a new judge, [Lanni's] response to [NCAA's] [M]otion should be stayed.[3]
> 6. Technically, [NCAA] has requested two forms of relief. A motion pursuant to [T.R. 12(B)(6)] and a motion pursuant to [T.R. 56(C)]. [Lanni] will file the appropriate responses separately to the two motions, as

---

[3] On April 11, 2012, Lanni had filed two separate motions pursuant to Ind. T.R. 79(C)(3) and pursuant to T.R. 76(B) - (C) requesting the recusal of the trial judge.

procedurally, the two motions have different standards for analysis. [Lanni] does not concede the Affidavit filed by [NCAA] should be allowed relative to the [T.R. 12(B)(6)] motion.

7. Alternatively, it is premature to file a summary judgment given the fact the discovery regarding factual matters relative to [Lanni's] Complaint will be issued. "Moreover, we have frequently emphasized the critical importance of discovery in the summary judgment context . . . As we have stressed, however, summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information." *Schering Corp. v. Homes Ins. Co*., 712 F.2d 4, 10 (2nd Cir. 1983).

(Appellant's App. p. 37). On April 24, 2012, the trial court granted Lanni's request for a change of judge and on May 23, 2012, the appointment of a special judge was entered. On May 4, the NCAA opposed Lanni's request to stay the briefing schedule and on May 29, 2012, after the special judge was appointed, the trial court issued its order denying Lanni's motion for stay and set the NCAA's Motion for a hearing on July 9, 2012. On May 31, 2012, Lanni served the NCAA with her first set of interrogatories.

On June 13, 2012, Lanni filed a motion for extension of time to respond to the NCAA's Motion, asserting that discovery is still on-going "regarding factual matters relative to [Lanni's] Complaint." (Appellant's App. p. 56). Two days later, on June 15, 2012, the NCAA filed its motion to stay discovery pending the trial court's ruling on its motion for summary judgment, as well as a brief in opposition to Lanni's motion for extension of time and in support of its own motion to stay discovery. On July 2, 2012, Lanni filed a response to NCAA's opposition to extend time and to NCAA's motion to stay discovery, as well as a separate motion to strike Shaul's affidavit. Also, that same day, the NCAA filed a motion for enlargement of time to respond to Lanni's discovery

4

request pending a ruling on the NCAA's motion to stay discovery, which was granted by the trial court.

On July 5, 2012, the trial court entered an order granting NCAA's motion to stay discovery pending a ruling on its motion for summary judgment; yet, the trial court struck the following language from the NCAA's proposed order: "[Lanni] is prohibited from filing any response or submitting any evidence in response to the [m]otion for [s]ummary [j]udgment." (Appellant's App. p. 136). At the same time, the trial court denied Lanni's motion for extension of time to respond to the NCAA's Motion. On July 6, 2012, the NCAA responded to Lanni's motion to strike Shaul's affidavit.

On July 9, 2012, prior to the trial court's hearing on the NCAA's Motion, Lanni filed her designation of materials. At the hearing, Lanni objected to the trial court's conversion of NCAA's Motion to a motion for summary judgment because she had not received any notice that the trial court would treat the combined Motion as a summary judgment motion and because of her lack of opportunity to conduct discovery. Later that same day, the trial court issued an Order granting NCAA's Motion, entering summary judgment in favor of NCAA, as well as an Order denying Lanni's motion to strike Shaul's affidavit.

Lanni now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *NCAA's Motion*

Lanni's main argument focuses on the trial court's treatment of the NCAA's Motion which combined a motion based on T.R. 12(B)(6) with a motion based on T.R.

5

56. Specifically, she claims that pursuant to the language of T.R. 12(B)(6), the trial court was required to notify[4] her prior to considering the NCAA's Motion as a motion for summary judgment and the trial court was mandated to award her a reasonable time to conduct discovery.

Indiana Trial Rule 12(B)(6) (emphasis added) provides, in pertinent part, that:

(6) Failure to state a claim upon which relief can be granted, which shall include failure to name the real party in interest under Rule 17;

\* \* \*

If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. *In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*

We have previously analyzed the interplay between a T.R. 12(B)(6) motion and a T.R. 56 motion in *Azhar v. Town of Fishers*, 744 N.E.2d 947, 949 (Ind. Ct. App. 2001). In *Azhar*, this court was asked to evaluate whether the trial court caused prejudice to Azhar when it converted the Town's motion to dismiss into a motion for summary judgment without specific prior notice to Azhar. Azhar contended that she was surprised by the trial court's action and that the surprise resulted in a lack of reasonable opportunity to put forth evidence to show the existence of genuine issues of material fact. *Id*. at 950. Upon review, we stated:

---

[4] However, during oral argument, Lanni's counsel asserted to be no longer concerned about the "notice requirement."

6

Ind. Trial Rule 12(B) provides that a motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the trial court." Where a trial court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to present T.R. 56 materials. *See* T.R. 12(B); *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1313 (Ind. Ct. App. 1993), *trans. dismissed*. The trial court's failure to give explicit notice of its intended conversion of a motion to dismiss to one for summary judgment is reversible error only if a reasonable opportunity to respond is not afforded a party and the party is thereby prejudiced. *Ayres v. Indiana Heights Volunteer Fire Department*, 493 N.E.2d 1229, 1233 (Ind. 1986).

Our review of the relevant cases discloses at least [three] considerations pertinent to a determination of whether a trial court's failure to give express notice deprives the nonmovant of a reasonable opportunity to respond with T.R. 56 materials. First, we consider whether the movant's reliance on evidence outside the pleadings should have been so readily apparent that there is no question that the conversion is mandated by T.R. 12(B). *See Duran v. Komyatte*, 490 N.E.2d 388, 391 (Ind. Ct. App. 1986), *trans. denied* (noting that the operation of T.R. 12(B) is "well known" and a "clear mandate" of which counsel should be cognizant). Second, we consider *whether there was ample time after the filing of the motion for the nonmovant* to move to exclude the evidence relied upon by the movant in support of its motion or *to submit T.R. 56 materials in response thereto*. *See Biberstine*, 625 N.E.2d at 1314. Third, we consider whether the nonmovant presented "substantiated argument" setting forth how she "would have submitted specific controverted material factual issues to the trial court if [she] had been given the opportunity." *Ayres*, 493 N.E.2d at 1233 (citing *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977)).

*Id*. at 950-51 (Emphasis added, internal footnote omitted). Although not explicitly stated, Lanni's argument mainly focuses on the second element of the *Azhar* test: she claims that she was never allowed the opportunity to conduct any discovery. In *Azhar*, we referenced the approximate three month time period between the filing of the motion to dismiss and the hearing as "ample" time to allow Azhar to (1) move to exclude the evidence relied on by the Town; (2) file a motion for additional time to conduct discovery

7

to ascertain the evidence in opposition to the motion; and/or (3) submit materials in opposition thereto. *Id*.

We reached a different result in two older cases where trial courts considered matters outside the pleadings and converted the T.R. 12(B)(6) motions into motions for summary judgment without holding hearings or giving the parties notice that they were doing so. In both instances, this was held to be reversible error because the trial court did not allow the opposing parties a reasonable opportunity to present all material made pertinent to such a motion by T.R. 56.

Specifically, in *Carrell v. Ellingwood*, 423 N.E.2d 630, 632 (Ind. Ct. App. 1981), *trans. denied*, Ellingwood filed a motion to dismiss Carrell's complaint to contest a will. Carrell filed objections to the motion, accompanied by an affidavit. *Id*. That same day, the trial court, without notice, hearing, or any other proceeding, granted Ellingwood's motion. *Id*. Carrell appealed, asserting that the trial court erred in not scheduling a hearing on Ellingwood's motion and not treating the motion as one for summary judgment. *Id*. at 633. On appeal, the *Carrell* court, after finding that the trial court had properly converted the motion to dismiss into a motion for summary judgment, nevertheless concluded that "in such circumstances, [the trial court is required] to grant the parties a reasonable opportunity to present all material made pertinent to a T.R. 56 motion." *Id*. at 634. Holding that no reasonable time to present additional materials had been granted to the parties, we reversed the trial court's summary judgment. *Id*.

Likewise, in *Foster v. Littell*, 293 N.E.2d 790, 791 (Ind. Ct. App. 1973), Littell filed a motion to dismiss based on T.R. 12(B)(6). Foster filed an opposition, together

with an affidavit.  *Id.*  At the hearing on the motion to dismiss, Foster's counsel requested to be informed whether or not the motion would be treated as a motion for summary judgment.  *Id.*  That request was made so that there would be ample time, if needed, to prepare materials in accordance with the summary judgment standards.  *Id.*  Foster, however, was never informed that the motion to dismiss had become one for summary judgment until later when he learned by surprise that a judgment had been entered against him.  *Id.* at 791.  Foster appealed.  We concluded that:

> [i]nasmuch as [Foster] had filed an affidavit and [Littell] had filed a memorandum with his motion and the affidavit and memorandum are part of the record in the cause before the trial judge ruled on the respective motions and were not excluded by the record of the trial court, it is our opinion that the affidavit being matter outside the pleadings, falls with the guidelines of [T.R.] 12(B)(6), and ultimately came under [T.R.] 56.  The court should have given reasonable opportunity to both parties to present all material made pertinent to such a motion by [T.R.] 56.

*Id.* at 792 (internal citations omitted).

Here, the evidence reflects that the NCAA's Motion, together with Shaul's affidavit, was filed on April 3, 2012.  Because evidence outside the pleading was presented and not excluded by the trial court, we find that the trial court's treatment of the NCAA's Motion as a motion for summary judgment was proper.  However, due to this conversion from a T.R. 12(B)(6) motion to a T.R. 56 motion, the trial court was required to give "all parties reasonable opportunity" to present all pertinent material.  *See also Ayres*, 493 N.E.2d at 1233 (the trial court's failure to give explicit notice of its intended conversion is reversible error only if a reasonable opportunity to respond is not afforded to a party and a party is thereby prejudiced).

9

Eighteen days after the NCAA's Motion, on April 20, 2012, Lanni filed a motion for stay of briefing schedule, asserting that discovery was still in the early stages and that discovery to all parties would be sent out within the month. Additionally, Lanni objected to the inclusion of Shaul's affidavit in NCAA's Motion and the NCAA's early request for summary judgment. The NCAA opposed Lanni's motion for stay and, on May 29, 2012, the trial court denied Lanni's motion to stay the briefing. Two days later, on May 31, 2012, Lanni served the NCAA with her first set of interrogatories.

On June 13, 2012, Lanni filed a motion for extension of time to respond to NCAA's Motion. Two days later, the NCAA moved to stay discovery pending the trial court's ruling on its Motion, to which Lanni objected. On July 5, 2012, the trial court granted the NCAA's motion to stay discovery, and on July 9, 2012, the trial court conducted its hearing on the Motion.

Although Lanni self-characterizes her initial motion as a motion for stay of briefing, a review of the reasons set forth in Lanni's April 20, 2012 motion establishes that it is more properly treated as a motion for alteration of time, pursuant to T.R. 56(I).[5] Having filed her motion well within the thirty-day response time to a motion for summary judgment, Lanni clearly objected to the premature nature of the NCAA's Motion, informing the trial court that litigation has just begun and discovery is being drafted. We are mindful that at the time the NCAA filed its Motion, litigation was barely two months old and the NCAA had yet to file a responsive pleading to Lanni's

---

[5] Indiana Trial Rule 56(I) provides that "For cause found, the [c]ourt may alter any time limit set forth in this rule upon motion made within the applicable time limit."

10

Complaint. As such, Lanni had just cause to request an alteration of the regular time limits for briefing and designating materials to respond to a motion for summary judgment as Lanni was not yet apprised of NCAA's expected defense and had yet to conduct any discovery. Moreover, in its rush to judgment, the NCAA then picked up its speed by not only objecting to all motions Lanni filed but also by successfully staying all discovery requests.

Disputing the existence of any "cause" for Lanni's motion for alteration of time, the NCAA argues that Lanni's discovery requests did not bear "on issues material to the [M]otion." (Appellee's Br. p. 14). "As a general proposition, it is improper for a court to grant summary judgment while reasonable discovery requests that bear on issues material to the motion are still pending." *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 698 (Ind. 2000). In this light, the NCAA argues that Lanni's discovery requests "are nothing more than generic form requests" without focusing on the main issue raised in NCAA's Motion, *i.e.*, that the NCAA had no involvement in the Notre Dame fencing match. (Appellee's Br. p. 15). However, the NCAA's self-serving interpretation of what issues are "material" to the cause should not be prevailing; rather, the reasonableness of the request should be the initial predominant factor where discovery is in its early stages. Here, the NCAA's motions, granted by the trial court, effectively prevented Lanni from conducting any discovery, let alone any reasonable discovery.

Based on the circumstances before us, it is clear that the trial court abused its discretion when it denied Lanni's April 20, 2012 motion for alteration of time. By its denial, the trial court effectively deprived Lanni of a reasonable opportunity to present

11

any material made pertinent to a T.R. 56 motion. *See Carrell v. Ellingwood*, 423 N.E. at 634. By its subsequent grant of the NCAA's motion to stay discovery, the trial court further negated any opportunity to present relevant materials in opposition to the motion for summary judgment. Therefore, because the trial court did not follow the directives for converting a T.R 12(B)(6) motion to a T.R. 56 motion, we reverse the trial court's summary judgment in favor of the NCAA.

## II. *Shaul's Affidavit*

Lastly, Lanni contends that the trial court abused its discretion when it refused to strike Shaul's affidavit, which was attached to the NCAA's Motion. A trial court has broad discretion in ruling on a motion to strike. *Norfolk Southern Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 100 (Ind. Ct. App. 2005), *trans. denied*. Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id*. We reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. at 101. Further, the trial court's decision will not be reversed unless prejudicial error is shown. *Id*.

Pursuant to Indiana Trial Rule 56(E) "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Lanni now asserts that Shaul's "self-serving" affidavit should be stricken because it lacks foundation, is incomplete, and is based on speculation. She specifically focuses her attention on paragraphs 4, 6, 8, 9, and 10, which state as follows:

12

4.  I have read [Lanni's] Complaint for Damages.  In her Complaint, Lanni alleges that the NCAA, through its agents, including but not limited to the NCAA Men's and Women's Fencing Committee and Regional Advisory Committees, was responsible for operating the Midwest Regional Fencing Competition on March 7, 2010 at the University of Notre Dame Du Lac.  These facts alleged by Lanni are incorrect.

* * *

6. The NCAA did not have any involvement in any fencing competition that may have occurred on March 7, 2010, including any fencing competition at Notre Dame.  To the extent a fencing competition was held at Notre Dame on March 7, 2010, the NCAA did not sanction any such event.  The NCAA did not participate in any such event.  The NCAA did not supervise any such event.  The NCAA did not select the officials for any such event.  The NCAA had no other involvement with any such event.

* * *

8.  The only other fencing competitions in which the NCAA has limited involvement in a given year are the NCAA Regional fencing competitions.  There currently are four NCAA Regional fencing competitions (Midwest, Mid-Atlantic/South, Northeast, and West).  The NCAA Regional fencing competitions take place two weeks before the National Collegiate Men's and Women's Fencing Championships.  The NCAA's involvement in the NCAA Regional fencing competitions is through its four Regional Advisory Committees, one for each region.  The Regional Advisory Committees may serve on the bout committees at the NCAA Regional fencing competitions if the bout committees convene.  The Regional Advisory Committees answer questions that the host institutions may have, work with the national head official to secure a regional head official, address protests that arise in bouts and tabulate the scores to determine which student athletes will move on to compete in the National Collegiate Men's and Women's Fencing Championships.

9.  The NCAA uses set rotations (as recommended by the institutions in each region) as to where the NCAA Regional fencing competitions will take place.  The institutions hosting the NCAA Regional fencing competitions are responsible for organizing, running and supervising the events. In 2010, the NCAA's Regional fencing competitions took place at the following institutions:

> (a) Midwest Region:  Northwestern University on March 13-14, 2010;

13

(b) Mid-Atlantic/South Region: Drew University on March 13, 2010;

(c) Northeast Region: Brown University on March 14, 2010; and

(d) West Region: University of California, San Diego on March 13, 2010.

10. If a school, group of schools or conference put on competitions prior to the NCAA's fencing Regional fencing competitions, the NCAA would have no involvement with such competitions.

(Appellant's App. pp. 28-30).

Contrary to Lanni's portrayal, we cannot conclude that the statements contained in Shaul's affidavit amount to conclusory lay opinions premised on speculation. In her affidavit, Shaul avers that she is the championships manager for fencing at the NCAA and verifies that her testimony is based upon personal knowledge. She attests to factual matters with respect to the NCAA's involvement and participation in fencing competitions. The affidavit does not contain any internal inconsistencies or evasive language. While the affidavit might contain some generalized statements, these statements are nevertheless credible and clearly based on her personal knowledge due to the position she holds and as such, are admissible evidence.

However, although Lanni complains that Shaul's affidavit is incomplete and that the "NCAA was under an affirmative obligation to tell the entire story," she fails to present us with any references to case law establishing this affirmative obligation. We remind Lanni that "a party opposing the motion [for summary judgment] shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment[.]" *See* T.R. 56(C). Therefore, if there was a more complete story to tell, Lanni should have presented it to the court pursuant to the rules for summary

14

judgment and thereby create an issue of material fact. We conclude that the trial court did not abuse its discretion when it admitted Shaul's affidavit.

CONCLUSION

Based on the foregoing, we conclude that the trial court erred when it converted the NCAA's Motion into a motion for summary judgment without awarding Lanni a reasonable opportunity to present relevant materials in opposition to the motion for summary judgment; and the trial court did not abuse its discretion by denying Lanni's motion to strike Shaul's affidavit, designated by the NCAA.

Reversed in part, affirmed in part, and remanded for further proceedings.

BRADFORD, J. and BROWN, J. concur