**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**ELIZABETH C. MILLIKEN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

FILED
May 24 2013, 9:17 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| REBIRTH CHRISTIAN ACADEMY DAYCARE, INC., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1209-MI-467 |
| | ) | |
| INDIANA FAMILY & SOCIAL SERVICES ADMINISTRATION, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia Ayers, Judge
Cause No. 49D04-1007-MI-30328

May 24, 2013

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Rebirth Christian Academy Daycare, Inc. (Rebirth), appeals the trial court's denial of its Motion to Dissolve and/or Modify Order in First Amended Agreement Judgment.

We affirm.

## ISSUE

Rebirth raises three issues on appeal, one of which we find dispositive and which we restate as follows: Whether the trial court properly determined that Rebirth cannot employ LaSonda Carter (Carter) pursuant to Ind. Code section 12-17.2-6-14 despite an earlier trial court's order restricting access to her criminal record.

## FACTS AND PROCEDURAL HISTORY

Rebirth is a non-profit religious organization that operated a child care ministry (CCM) inside a church located at Caito Drive in Indianapolis, Indiana. Carter was the CCM's director and maintained both an office and a church sanctuary on its premises. In July of 2010, a dispute arose between Rebirth and Appellee-Respondent, the Indiana Family & Social Services Administration (FSSA), regarding Rebirth's employment of Carter. The FSSA contended that Rebirth was prevented from employing Carter because of her previous conviction for a felony relating to controlled substances pursuant to Ind. Code Ch. 35-48-4. On July 7, 2010, Rebirth filed an emergency petition for a temporary restraining order against the FSSA, which was denied by the trial court the same day. On July 19, 2010, the FSSA filed a verified petition for preliminary and permanent

2

injunction and civil penalties. A hearing was held, after which on August 2, 2010, the trial court approved the Agreed Entry entered into by both parties and which provides, in pertinent part,

a. [Carter] is to have no contact with the children at Rebirth and she cannot be at Rebirth at all when children are there.
b. Any certificate of registration to operate as a child care ministry that Rebirth might obtain will be terminated immediately and Rebirth will be required to close on the effective date of the termination if [Carter] is found to be at Rebirth when children are there.
c. Rebirth acknowledges that FSSA by its employees, agents, and/or representatives may randomly inspect [Rebirth] [] and any future locations of Rebirth.
d. Rebirth agree[s] to pay a five hundred dollar ($500.00) fine to FSSA on or before September 29, 2010.

(Appellee's App. p. 6).

The FSSA received reports in 2010 and 2011 that Rebirth was violating the Agreed Entry. Consequently, on April 15, 2011, the FSSA filed a motion for rule to show cause as to why Carter and Rebirth should not be held in contempt for disobeying the Agreed Entry. A hearing was held and the trial court continued the contempt proceedings until November 9, 2011. At the November 9, 2011 hearing, the parties agreed to amend the Agreed Entry and entered into the First Amended Agreed Judgment. In an attempt to work with Carter and Rebirth and to resolve the issues pending before the trial court, the FSSA agreed in this First Amended Agreed Judgment that

a. Rebirth agrees to remain closed until Rebirth applies to be a Registered Child Care Ministry and is issued a Certificate of Registration.
b. FSSA agrees to process any application filed by Rebirth in a timely manner subject to the terms of this First Amended Agreed Judgment.

3

e.[1] [Carter] further agrees to have no contact with the children at Rebirth and she cannot be in the building, on the premises, or in the parking lot at Rebirth during operational hours or while children are there.

* * *

g. FSSA further agrees to allow [Carter] to perform administrative duties for Rebirth as long as it does not involve any contact whatsoever with the children or being in the building, on the premises, or in the parking lot at Rebirth during operational hours or while children are there.

(Appellant's App. pp. 4-5).

In January of 2011, a substantiated report naming Carter as a perpetrator of child abuse or neglect was expunged from the Child Protection Index by the Marion County Superior Court. On January 18, 2012, Carter obtained an order from the Marion Superior Court, Criminal Division, restricting access to Carter's criminal history. On February 7, 2012, the FSSA issued Rebirth a new certificate of registration to operate a CCM. On May 21, 2012, Rebirth was found to be in violation of at least eight requirements for CCMs and a corrective action plan was issued. Because Rebirth failed to comply with the corrective action plan, the FSSA terminated its certificate of registration on June 22, 2012.

Previously, on March 30, 2012, as a result of the court's order restricting access to Carter's criminal history, Rebirth filed a Motion to Dissolve and/or Modify Order in First Amended Agreed Judgment. In the motion, Rebirth contended that because Carter's criminal record is restricted and her substantiated allegation for child abuse or neglect has been expunged, Rebirth can now employ Carter. The FSSA opposed the motion. On

---

[1] It appears that the First Amended Agreed Judgment, as included in the Appendix, has omitted paragraphs (c) and (d).

4

May 30, 2012, the trial court conducted a hearing on Rebirth's motion, which the trial court denied on August 4, 2012, concluding, in pertinent part that "[Carter] still has a controlled substance felony conviction because her records have only been restricted and not expunged. This is a fact known to Rebirth and FSSA." (Appellant's App. p. 45).

Rebirth now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Rebirth contends that the trial court erred when it denied its Motion to Dissolve and/or Modify the Order in the First Amended Agreed Judgment. Specifically, Rebirth asserts that after the restriction of Carter's criminal record by virtue of the application of the Restricted Access Act, the disqualifying conviction is no longer disclosed on a criminal history check and thus Carter becomes employable at a CCM.

Resolution of Rebirth's argument will require us to interpret the interplay between Indiana's Restricted Access Act and the regulations pertaining to child care ministries, included in Indiana Code Chapter 12-17.2-6. The interpretation of a statute is a legal question that is reviewed *de novo*. *Sun Life Assur. Co. of Canada v. Ind. Dept. of Ins.*, 868 N.E.2d 50, 55 (Ind. Ct. App. 2007). Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id*. The first and often the last step in interpreting a statute is to examine the language of the statute. *Id*. When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id*. This court's goal in statutory construction is to determine, give

5

effect to, and implement the intent of the legislature.  *Shaffer v. State*, 795 N.E.2d 1072, 1076 (Ind. Ct. App. 2003).

## I. *Child Care Ministries*

Generally, in Indiana, child care centers must be licensed by the State and are supervised through the FSSA.  *See* I.C. § 12-17.2-1-1.  Indiana Code section 12-17.2-2-8 describes certain child care providers that are exempt from state licensure, one of which is "[a] child care ministry registered under [I.C. Ch.] 12-17.2-6."  *See* I.C. § 12-17.2-2-8. A child care ministry is defined as "child care operated by a church or religious ministry that is a religious organization exempt from federal income taxation under Section 501 of the Internal Revenue Code."  I.C. § 12-7-2-28.8.  If an individual or organization elects to run a child care ministry without obtaining a child care center license, it must comply with the rules established by the division for child care ministries and it must meet the requirements for becoming exempt from licensure.  *See* I.C. §§ 12-17.2-2-5; -6-1 *et seq*. One of these requirements is included in Chapter 6 and regulates a child care ministry to

> (1) Conduct a criminal history check of the child care ministry's employees and volunteers;
>
> (2) Refrain from employing, or allowing to serve as a volunteer, an individual who:
> (A) has been convicted of any of the following felonies:
> . . .
> (XVII) a felony relating to controlled substances under [I.C. Ch.] 35-48-4.
>
> (3) Maintain records of each criminal history check.

I.C. § 12-17.2-6-14.  If an unlicensed child care ministry fails to comply with these statutory requirements, it is no longer exempt from licensure under Indiana law.  I.C. §

6

12-17.2-6-9.  The ministry must then cease operations immediately and apply for and receive a certificate or license prior to resuming child care.  I.C. §§ 12-17.2-6-2; -3.

Rebirth was a license-exempt child care ministry.  When running Carter's criminal history, her conviction for a felony relating to controlled substances was noted.  As such, Carter was prohibited from being employed at or volunteering at any child care ministry.  Rebirth and Carter now attempt to circumvent this prohibition by relying on the Restricted Access Act.

## II.  *The Restricted Access Act*

Since 1983, Indiana has allowed some form of restriction of criminal records pursuant to Indiana Code Chapter 35-38-5 *et seq*.  Under Indiana Code section 35-38-5-5(b) a person may petition the state police department to limit access to the person's limited criminal history to criminal justice agencies if more than fifteen years have elapsed from the last date the person was discharged from probation, imprisonment or parole.  In 1998, the General Assembly added explicit provisions governing the release of records when an individual volunteers services involving the contact, care, or supervision of a child under the purview of a social services agency or a nonprofit organization.  *See* I.C. §§ 35-38-5-5(a); 10-13-3-27(a)(8).  With another amendment in 2011, the General Assembly added I.C. § 35-38-5-5.5 (2012) and I.C. Ch. 35-38-8 (2012), related to the restriction of records.  While I.C. § 35-38-5-5.5 concerns the restriction of records relating to an arrest, I.C. Ch. 35-38-8 allows an individual convicted of a Class D felony offense that did not result in injury to a person and who is not a sex or violent offender to

7

petition the court to restrict access to his or her criminal history by a non-criminal justice agency.

### III. *Interplay Between the Two Statutes*

Rebirth now contends that the application of both statutes leads to the "absurd result that Rebirth, by virtue of its prior knowledge of Carter's conviction, is prohibited from employing Carter while any other CCM, having no prior knowledge of the disqualifying conviction, is not." (Appellant's br. p. 13).

Contrary to Rebirth's assertion, the Restricted Access Act and Indiana Code section 12-17.2-6.14 can be applied harmoniously. Although not stated explicitly, the purpose of the Restricted Access Act is to grant individuals a second chance by giving access to certain employment that may have been previously unavailable to them due to their criminal history. *See* I.C. § 35-38-8-7. However, the Act is silent as to information obtained by employers prior to restriction under the Act, or obtained through other sources before a restriction is in place. Additionally, the Act does not impose a retroactive prohibition, preventing an agency from using its prior knowledge in its determination of future actions.

The purpose of the Act is not ignored when the FSSA applies the provisions of Indiana Code section 12-17.2-6-14, which prevents the employment by a CCM of certain individuals with disqualifying convictions. Here, Rebirth and the FSSA received information of Carter's disqualifying conviction for employment at a CCM before Carter applied for a restriction of her criminal record. As such, Rebirth is prohibited from employing Carter and is mandated to keep a record of the criminal history check. *See*

I.C. § 12-17.2-6-14.  Because FSSA has been informed of Carter's disqualifying criminal history prior to its restriction, the FSSA can rely on this knowledge to prevent Carter's future efforts to work at any CCM.[2]

Moreover, Indiana Code section 35-38-8-6 provides that:

(a) If a person whose records are restricted under this chapter brings a civil action that might be defended with the contents of the record, the defendant is presumed to have a complete defense to the action.

* * *

(c) In an action described in subsection (a), the plaintiff may be required to state under oath whether:
 (1) the plaintiff had records in the criminal justice system; and
 (2) those records were restricted.

(d) In an action described in subsection (a), if the plaintiff denies the existence of the records, the defendant may prove the existence of the records in any manner compatible with the law of evidence.

Because Rebirth initiated a civil action by way of its motion to dissolve and/or modify order in First Amended Agreed Judgment, the FSSA, as the defendant, can use Carter's entire criminal history as a defense to Rebirth's claim that Carter has become employable by a CCM.

---

[2] It appears from Rebirth's brief, that Rebirth is treating Carter's restriction of her criminal history as a *de facto* expungement.  However, the record reflects that only a substantiated report naming Carter as a perpetrator of child abuse or neglect was expunged from the Child Protection Index.  Expungement essentially destroys or seals the record relating to a person's arrest. *See* I.C. Ch 35-38-5 *et seq*.  Here, as also noted by the trial court, Carter's disqualifying conviction was merely restricted.
Additionally, it should be mentioned that the General Assembly crafted a bill broadening the applicability of the expungement statute to persons convicted of a felony.  This Bill has passed both the House and the Senate and is expected to become effective July 1, 2013. *See* House Bill 1482, http://www.in.gov./apps/lsa/session/billwatch (last visited Apr. 30, 2013).

Based on the circumstances before us, we conclude that the FSSA can use its prior knowledge, established prior to Carter's restriction of her criminal history, to disqualify Carter from being employed by a CCM.[3]

CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Rebirth's Motion to Dissolve and/or Modify Order in First Amended Agreement Judgment.

Affirmed.

BRADFORD, J. and BROWN, J. concur

---

[3] Rebirth also raises two constitutional issues. Specifically, Rebirth asserts that I.C. § 12-17.2-6-14 is unconstitutional as applied when viewed in light of the Equal Protection Clause of Article I, § 23 and the Fourteenth Amendment. However, we do not reach constitutional claims when a case can be properly disposed of on non-constitutional grounds. *See Garnelis v. Ind. Dep't of Health*, 806 N.E.2d 365, 372 (Ind. Ct. App. 2004).