# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MATTHEW M. GOLITKO**
Golitko & Daly, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN C. TRIMBLE**
**SONIA C. DAS**
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON YOUNG, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1303-PL-298 |
| | ) | |
| HOOD'S GARDENS, INC., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-1008-PL-12527

**December 17, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Jason Young (Young), appeals the trial court's summary judgment in favor of Appellee-Plaintiff, Hood's Gardens, Inc. (Hood's).

We affirm.

## ISSUES

Young raises two issues on appeal, which we restate as the following:

(1) Whether the trial court abused its discretion by striking portions of Young's designated affidavit; and

(2) Whether the trial court erred when it granted summary judgment in favor of Hood's.

## FACTS AND PROCEDURAL HISTORY

Steve Hood (Steve) is the owner of Hood's, a greenhouse located in Noblesville, Indiana. In September 2009, Steve contacted Craig Mead (Mead), who did business as Discount Tree Extraction a/k/a D & E Tree Extraction, to remove a tall oak tree at Hood's. Mead provided similar services to Hood's a year before, removing a large hickory tree that had been damaged during a storm. Though contracting Mead to remove the tree, Steve did not permit him to keep the wood.

Mead quoted Hood's a price of $600 to remove the tree, which Steve accepted. No written agreement was made. Mead's services included cutting down and removal of the tree, wood, and debris. This time, Mead was permitted to keep the wood, which he intended to resell as firewood. The price was fixed: the amount of time, the use of

2

equipment, or the number of workers required to complete the work would not affect the price. However, Mead's practice was to "price accordingly if I got all the wood." (Appellant's App. p. 91).

In September 2009, Mead sent workers to Hood's to cut the tree limbs down. Steve did not direct their activities. Workers also removed the wood from Hood's, but the stump, "measuring ten to fifteen feet in height," remained. (Appellant's App. p. 36). Meanwhile, Mead arranged for Young to remove the stump, offering him $100 for the work. On September 29, 2009, Young arrived at Hood's and told Steve that Mead had sent him to remove the stump. Young called Mead to complain that the work was taking "too long," and that he did not "really think this is worth my time for the money." (Appellant's App. p. 92). Mead agreed to pay Young $200 for the work. While working, Young was severely injured and rendered a paraplegic. Steve later paid Mead $600 for the work.

On October 27, 2009, an attorney representing Young contacted Hood's, seeking worker's compensation benefits because Mead did not carry worker's compensation insurance. Hood's did not procure a certificate from Mead certifying worker's compensation coverage. On August 26, 2010, Hood's filed a complaint for declaratory judgment against Mead and Young. Hood's alleged that because the work performed by Mead was less than $1,000, it was not secondarily liable for worker's compensation benefits. On October 25, 2010, Young filed his answer, but Mead did not respond and a default judgment later was issued against him.

3

On July 29, 2011, Hood's filed its motion for summary judgment, arguing that, as a matter of law, it was not secondarily liable for payment of worker's compensation benefits to Young. Specifically, Hood's contended that because its contract with Mead was less than $1,000, it did not meet the threshold to trigger secondary liability under the Indiana Worker's Compensation Act (Act). On September 28, 2011, Young responded to Hood's summary judgment motion, designating his affidavit in support. That same day, Young filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the Indiana Worker's Compensation Board possessed exclusive jurisdiction over the matter. On October 25, 2011, Hood's responded and moved to strike portions of Young's affidavit. On December 13, 2011, the trial court held hearings on the parties' motions, granting Young's motion to dismiss and declaring Hood's summary judgment moot.

Hood's appealed and this court reversed. *Hood's Gardens, Inc. v. Young*, 976 N.E.2d 80, 84 (Ind. Ct. App. 2012). We concluded that the Act's exclusivity provision deprived a trial court of jurisdiction to address an employee's "rights and remedies in an action against his employer for injuries," the trial court nevertheless possessed jurisdiction "to make a threshold determination about whether an employer is subject to the Act's rights and remedies provisions." *Id*. at 83-84. As a result, we held that "the trial court erred in granting Young's motion to dismiss for lack of jurisdiction and in deciding that [Hood's] summary judgment motion was moot" and remanded for further proceedings. *Id*. at 84.

4

On February 8, 2013, the trial court held a hearing on the motion for summary judgment and motion to strike. On March 12, 2013, the trial court issued its Order granting summary judgment in favor of Hood's and striking portions of Young's affidavit.

Young now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

On appeal, Young challenges the trial court's grant of summary judgment in favor of Hood's as well as the striking of his affidavit. The purpose of summary judgment is to terminate litigation where there is no factual dispute and which may be determined as a matter of law. *Madison Cnty. Bd. of Comm'rs v. Town of Ingalls*, 905 N.E.2d 1022, 1025 (Ind. Ct. App. 2009), *trans. denied*. When reviewing the grant or denial of a motion for summary judgment, we must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Roche Diagnostics Operations, Inc. v. Marsh Supermarkets, LLC*, 987 N.E.2d 72, 78 (Ind. Ct. App. 2013), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. A trial court's grant of summary judgment is clothed with a presumption of validity. *BP Amoco Corp. v. Szymankski*, 808 N.E.2d 683,

686 (Ind. Ct. App. 2004), *trans. denied*. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidence designated to the trial court. *Town of Ingalls*, 905 N.E.2d at 1025.

Here, the trial court's summary judgment contains its findings of fact and conclusions of law in support. However, the trial court's findings on summary judgment are not binding on appeal. *Roche*, 987 N.E.2d at 78. Although an aid to appellate review, the trial court's findings and conclusions merely afford the appellant an opportunity to address the merits of the trial court's rationale. *Id*.

## II. *Motion to Strike*

Before turning to the merits of Young's appeal, we address the trial court's grant of Hood's motion to strike Young's affidavit. A trial court has broad discretion in ruling on a motion to strike. *Lanni v. Nat'l Collegiate Athletic Ass'n*, 989 N.E.2d 791, 797 (Ind. Ct. App. 2013). Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id*. at 797-98. We reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. at 798. Further, the trial court's decision will not be reversed unless prejudicial error is shown. *Id*.

Pursuant to Indiana Trial Rule 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

6

therein." The trial court struck Paragraph 7 of Young's affidavit, which contained his opinion that the value of the wood Mead took exceeded $400. Specifically, it concluded that Young did not qualify as an expert and "there is nothing in Young's affidavit … about his personal observations, knowledge, and past experience that would make his opinion as to the values of the wood admissible." (Appellant's App. pp. 97-98).

In his appellate brief, Young cites to his affidavit in his statement of facts but argues only that it "set out that the value of the wood exceeded the cash being paid to remove it." (Appellant's Br. p. 11). He does not otherwise develop his claim or provide citations to authority to dispute the trial court's striking a portion of the affidavit. We therefore conclude that Young has waived this argument. *See* Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, we find no abuse of discretion. Young's statement as to the value of wood at best qualifies as a conclusory and speculative lay opinion. Further, Young's affidavit contains no indication that he is an expert. *See* Ind. Evidence Rule 702. Nor does Young's affidavit establish that he has a degree of knowledge short of that sufficient to be declared a "skilled witness" under Indiana Evidence Rule 701. *See Linton v. Davis*, 887 N.E.2d 960, 975 (Ind.Ct.App.2007), *trans. denied*. Opinion testimony of a skilled witness or lay observer must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Evid.R. 701. Here, Young's affidavit offers no basis to conclude that the value of the wood is based upon his personal knowledge. Therefore, the trial court did not abuse its discretion by striking that portion of Young's affidavit.

7

### III. *Ind. Code Section 22-3-2-14(b)*

Young also contends that the trial court erred when it granted summary judgment. Specifically, he asserts that, although the contract between Hood's and Mead was $600, because Mead testified that he priced his services depending upon whether or not he was permitted to take the wood for resale, a genuine material of fact exists whether the actual value of the contract exceeded $1,000.

Resolution of Young's argument requires us to interpret Indiana Code section 22-3-2-14(b), which "imposes on a person who hires a contractor without verifying that the contractor carries worker's compensation insurance liability to the same extent as the contractor for the injury or death of any of the contractor's employees." *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1011 (Ind. 2010). The interpretation of a statute is a legal question that is reviewed *de novo*. *Rebirth Christian Acad. Daycare, Inc. v. Ind. Family & Soc. Servs. Admin.*, 990 N.E.2d 24, 27 (Ind. Ct. App. 2013). Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id*. The first and often the last step in interpreting a statute is to examine the language of the statute. *Id*. When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id*. This court's goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id*.

Indiana Code section 22-3-2-14(b) provides, in relevant part, as follows:

> [A]ny corporation, limited liability company, partnership, or person, contracting for the performance of any work exceeding one thousand dollars

8

($1,000) in value by a contractor subject to the compensation provisions of [I.C. ch.] 22-3-2 through [I.C. ch.] 22-3-6, without exacting from such contractor a certificate from the worker's compensation board showing that such contractor has complied with section 5 of this chapter, [I.C. §] 22-3-5-1, and [I.C. §] 22-3-5-2, shall be liable to the same extent as the contractor for compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such contractor, due to an accident arising out of and in the course of the performance of the work covered by such contract.

Isolating the statutory requirement that the "value" of the work exceed $1,000, Young argues that a contract's value consists of the total amount of consideration exchanged by the parties. Although the undisputed contract price for Mead's tree removal services was $600, Young urges us to include the value of the wood received by Mead to determine the value of the contract. According to Young, adding the contract price to the value of wood received by Mead yields a contract value exceeding $1,000.

In rejecting Young's argument, the trial court found that companies who contract for work in excess of $1,000 are put "on notice that … they may be liable for the worker's compensation benefits for the contractor's workers unless they first obtain a certificate of worker's compensation coverage from the contractor." (Appellant's App. p. 96). Therefore, the trial court interpreted the statute to require an "up-front" agreement "for the performance of work exceeding $1,000" to trigger secondary liability. (Appellant's App. pp. 96-97). The trial court reasoned that, "[o]therwise, companies would be unknowingly exposing themselves to liability, depending on the value of "scrap" that they just want to be removed from their property." (Appellant's App. p. 97). We agree.

9

"Value" means "[t]he monetary worth or price of something; the amount of goods, services, or money that something commands in an exchange." BLACK'S LAW DICTIONARY (9th ed. 2009). The statute specifies that it is the contractor who furnishes the performance of work in excess of $1,000 in value, rather than any value provided by the contractee. Thus, we interpret the statute to base secondary liability only upon the value provided by the contractor.

Although Hood's did not obtain a certificate from him, Mead agreed to provide tree removal services to Hood's for $600. Therefore, the value of the work performed by the contractor did not exceed $1,000 and no secondary liability for Hood's under I.C. § 22-3-2-14(b) resulted from the transaction. We therefore affirm the trial court's grant of summary judgment in favor of Hood's.

CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by striking Young's affidavit, and the trial court properly granted Hood's Motion for summary judgment

Affirmed.

ROBB, C. J. concurs

KIRSCH, J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

JASON YOUNG,                      )

          )

    Appellant-Defendant,   )

          )

      vs.              )     No. 29A02-1303-PL-298

          )

HOOD'S GARDENS, INC.,    )

          )

    Appellee-Plaintiff.    )

**KIRSCH, Judge,** *dissenting*

I respectfully dissent.

This case illustrates once again the marked difference in summary judgment procedure in Indiana as compared to federal practice. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 865 (Ind. Ct. App. 2010) (citing *Cole v. Gohmann*, 727 N.E.2d 1111, 1113 (Ind. Ct. App. 2000)). Federal summary judgment procedure requires summary judgment to be granted against a party who fails to establish an essential

element of that party's case as to which that party bears the burden of proof at trial. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In contrast, under Indiana's summary judgment procedure, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Id*. at 865-66 (citing *Jarboe v. Landmark Cmty. Newspapers*, 644 N.E.2d 118, 123 (Ind. 1994)). Only after the moving party has met this burden with a prima facie showing that no genuine issue of material fact exists does the burden then shift to the non-moving party to establish that a genuine issue of material fact does in fact exist. *Id*. at 866.

Here, the dispute between the parties centered on whether the value of the work provided by Mead exceeded $1,000. As the moving party, Hood's had the burden of establishing the absence of any genuine issue of material fact that the actual value of the services provided by Mead to Hood's, the $600 contract price plus the value of the wood Mead was allowed to keep, did not exceed $1,000. However, Hood's failed to designate any evidence to show that the value of the wood Mead was allowed to keep did not exceed $400, which would make the value of the services provided over $1,000. Mead testified that the wood was more valuable to him than the $600 in cash he received and that he made sure to clarify with Hood's that the contract was for $600 plus the wood. Hood's did not establish that the value of the wood combined with the $600 caused the value of services provided to it by Mead to not exceed $1,000.

12

The trial court found that, although it was possible that the wood did have a fair market value of over $400, Hood's did not acknowledge it and that no evidence was presented that Hood's was aware or should have been aware that the value of the wood exceeded $400. Under Indiana's summary judgment procedure, unlike the federal procedure, the burden was on Hood's to come forth with evidence to show that no genuine issue of material fact existed as to the value of the contract not exceeding $1,000, which Hood's failed to do. I, therefore, vote to reverse the grant of summary judgment in favor of Hood's and would remand for further proceedings.