Kathryn AZHAR, Appellant–Plaintiff,

v.

TOWN OF FISHERS, Town Council, of The Town of Fishers and Unnamed Committee of Fishers Town Council, Appellees–Defendants.

No. 29A02–0006–CV–354.

Court of Appeals of Indiana.

Feb. 16, 2001.

Alan J. Irvin, Indianapolis, IN, William E. Daily, Danville, IN, Attorneys for Appellant.

Douglas D. Church, Noblesville, IN, Attorney for Appellees.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant Kathryn Azhar appeals the trial court's grant of summary judgment in favor of Defendants–Appellants Town of Fishers ("Town"), Town Council of the Town of Fishers ("Town Council"), and Unnamed Committee of Fishers Town Council ("ad hoc committee") (collectively, "the Defendants").

We affirm the trial court's treatment of Defendants' motion to dismiss as a motion for summary judgment; however, we reverse the trial court's grant of summary judgment and remand for further proceedings.

### ISSUES

The following issues are dispositive:

I. Whether the trial court caused prejudice to Azhar when it converted the Defendants' motion to dismiss into a motion for summary judgment without specific prior notice to Azhar.

II. Whether the trial court erred in granting summary judgment.

### FACTS AND PROCEDURAL HISTORY

At an October 18, 1999, Town Council meeting, an ad hoc committee comprised of three members of the Town Council and others representing the YMCA of Greater Indianapolis made a recommendation to the Town Council. The recommendation regarded the adoption of a "Memorandum of Understanding" ("Memorandum") reached by the members of the ad hoc committee outlining how Fishers and the YMCA would jointly finance and construct a YMCA facility. The Town Council voted to approve the Memorandum.

Following the Town Council's approval of the Memorandum, Azhar contacted the Indiana Public Access Counselor and requested an opinion concerning whether the Town Council had violated the Indiana Open Door Law through the actions of the ad hoc committee. On October 25, 1999, the Public Access Counselor issued a written response on the understanding that the ad hoc committee was formed by the Town Council to meet with YMCA officials and negotiate an agreement concerning Town property. The Public Access Counselor stated that the ad hoc committee was a "governing body" as that term is used in the Open Door Law and that it violated the law in not conducting its meeting in accordance with the law's dictates.

Also on October 25, 1999, the Public Access Counselor opined in a telephone conference with the Town Attorney that the Town Council should rescind its acceptance of the Memorandum and that the ad hoc committee should conduct meetings pursuant to proper notice and open to the public as required by the Open Door Law. The next day, the Town Attorney spoke with a member of the Town Council and advised the member that "a recommendation be made to the full council that their action authorizing the execution of the [Memorandum] be rescinded and that additional public meetings be conducted pursuant to public notice of the ad hoc committee." (R. 30).

On October 29, 1999, Azhar filed a complaint asking the trial court, *inter alia,* to (1) determine that the Town Council and the ad hoc committee had violated the Open Door Law; (2) order the Defendants to properly post notices and agendas and keep minutes or memoranda of all future meetings of the Town Council and of all committees; (3) set aside the Town Council's approval of the Memorandum; and (4) set aside negotiations, conclusions, and recommendations of the ad hoc committee

relating to the Memorandum until all previous meetings of the Town Council or the ad hoc committee have been re-conducted after proper notice and with the public in attendance. On November 1, 1999, a Town employee received the summons and complaint. On the same date, the Town Council held a regular session and by motion rescinded the adoption of the Memorandum and directed the ad hoc committee to hold two additional meetings for the public to discuss the project. Those meetings were held on November 17th and 22nd, and Azhar appeared and addressed the ad hoc committee.

On December 9, 1999, the Defendants filed a motion to dismiss the complaint for the reason that Azhar's suit was rendered moot "by reason of the actions of the [Town Council] on November 1, 1999, and the actions of the ad hoc committee subsequent thereto on the occasion of the advertised and posted public meetings of said ad hoc committee." (R. 32). Attached as exhibits were the Public Access Counselor's affidavit and copies of the minutes of various Town Council and ad hoc committee meetings.

On March 17, 2000, the trial court conducted a hearing on the motion, and it subsequently converted the motion to dismiss into a motion for summary judgment because the motion to dismiss contained matters outside the pleadings. The trial court granted summary judgment for the Defendants. Azhar now appeals.

## DISCUSSION AND DECISION

### I. PROPRIETY OF CONVERTING MOTION TO DISMISS

Azhar contends that the trial court erred in converting the Defendants' motion to dismiss for failure to state a claim under Ind.Trial Rule 12(B)(6) into a summary judgment motion under Ind.Trial Rule 56. Azhar argues that she was surprised by the trial court's action and that the surprise resulted in a lack of a reasonable opportunity to put forth evidence to show the existence of genuine issues of material fact.

Ind.Trial Rule 12(B) provides that a motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the trial court." Where a trial court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to present T.R. 56 materials. *See* T.R. 12(B); *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1313 (Ind.Ct.App.1993), *trans. dismissed*.[1] The trial court's failure to give explicit notice of its intended conversion of a motion to dismiss to one for summary judgment is reversible error only if a reasonable opportunity to respond is not afforded a party and the party is thereby prejudiced. *Ayres v. Indian Heights Volunteer Fire Department*, 493 N.E.2d 1229, 1233 (Ind.1986).

Our review of the relevant cases discloses at least four considerations pertinent to a determination of whether a trial court's failure to give express notice deprives the nonmovant of a reasonable opportunity to respond with T.R. 56 materials. First, we consider whether the movant's reliance on evidence outside the pleadings should have been so readily apparent that there is no question that the

1. While the trial court referred to the Defendants' motion as a motion to dismiss, it premised its conversion of the motion into a summary judgment motion on T.R. 12(C). This section of T.R. 12 governs the conversion of a judgment on the pleadings into a summary judgment motion, and employs the language of T.R. 12(B) in guaranteeing the nonmovant a reasonable opportunity to present T.R. 56 materials. Because the standard applied to both a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings is the same, we will follow the trial court's designation of the motion as a motion to dismiss reviewable pursuant to T.R. 12(B). *See National Railroad Passenger Corp. v. Everton*, 655 N.E.2d 360, 363 (Ind.Ct.App.1995), *trans. denied* (holding that like a motion to dismiss for failure to state a claim pursuant to T.R. 12(B)(6), a T.R. 12(C) motion attacks the legal sufficiency of the pleadings).

conversion is mandated by T.R. 12(B). *See Duran v. Komyatte*, 490 N.E.2d 388, 391 (Ind.Ct.App.1986), *trans. denied* (noting that the operation of T.R. 12(B) is "well known" and a "clear mandate" of which counsel should be cognizant). Second, we consider whether there was ample time after the filing of the motion for the nonmovant to move to exclude the evidence relied upon by the movant in support of its motion or to submit T.R. 56 materials in response thereto. *See Biberstine*, 625 N.E.2d at 1314. Third, we consider whether the nonmovant presented "substantiated argument" setting forth how she "would have submitted specific controverted material factual issues to the trial court if [she] had been given the opportunity." *Ayres*, 493 N.E.2d at 1233 (citing *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir.1977)).

■ Our review of the record and Azhar's appellate briefs leads us to the conclusion that the trial court did not commit reversible error in converting the Defendants' motion to dismiss into a motion for summary judgment. First, unlike in some of the federal cases cited by Azhar wherein the movant's mention of evidence outside the pleadings in a supporting brief or memorandum left the nonmovant guessing as to the application of the federal equivalent of T.R. 12(B), the Defendants' reliance on the evidence outside the pleadings in this case was unmistakable.[2] Thus, given the mandatory wording of T.R. 12(B), Azhar should have known that the trial court was compelled to convert the motion to a summary judgment motion. Second, the approximate three month period between the filing of the motion to dismiss and the hearing thereon was ample time to allow Azhar to (1) move to exclude the evidence relied upon by the Defendants; (2) file a motion for additional time to conduct discovery to ascertain the evi-

dence in opposition to the motion; and/or (3) submit materials in opposition thereto. Finally, Azhar has failed to show, either in the hearing below or in her appellate briefs, what specific additional material she would have presented if express notice had been given.

Azhar relies on *Dixon v. Siwy*, 661 N.E.2d 600, 603 (Ind.Ct.App.1996) for the proposition that the Defendants' submission of evidence in conjunction with their motion to dismiss "does not put Azhar on notice that the motion automatically will be converted to a summary judgment motion ... [because] ... a trial court may in its discretion exclude evidence submitted with a [motion to dismiss] and refuse to treat the motion as one for summary judgment." Appellant's Brief at 10. In *Dixon*, we held that it is proper for the trial court to refuse to consider material outside the pleadings, even though submitted with a motion to dismiss, when examination of the face of the complaint alone shows that the plaintiff would not be entitled to relief under any set of circumstances. *Id.* The specific holding of *Dixon* is not applicable to the facts of the present case.

## II. PROPRIETY OF SUMMARY JUDGMENT

Azhar contends that the trial court erred in granting summary judgment in favor of the Defendants. As stated above, the evidence submitted with the Defendants' motion consisted of the Public Access Counselor's affidavit and copies of the minutes of various Town Council and ad hoc committee meetings. This evidence was submitted in an attempt to show that Azhar's lawsuit had been rendered moot by the Defendants' compliance with the Open Door Law in providing the public meetings on November 17th and 22nd.

---

**2.** We reject Azhar's contention, seemingly abandoned in her reply brief, that the Public Access Counselor's affidavit should have been excluded pursuant to Ind.Code § 5–14–4–10(6). This statute prohibits the issuance of an advisory opinion concerning a matter with respect to which a lawsuit has been filed under Ind.Code § 5–14–1.5 or Ind.Code § 5–14–3. It does not prohibit the filing of an affidavit outlining the dictates of an advisory opinion rendered before the filing of such a lawsuit.

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. Ind.Trial Rule 56(C); *Campbell v. Criterion Group*, 613 N.E.2d 423, 428 (Ind. Ct.App.1993), *on reh'g* 621 N.E.2d 342. It is only after the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact that the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell*, 613 N.E.2d at 428.

The Public Access Counselor's affidavit submitted with the Defendants' motion states that the Public Access Counselor advised the Defendants to "rescind the authority to execute the [Memorandum] which had been granted on October 18, 1999" and to "conduct additional meetings that were given proper notice and open to the public in compliance with the Open Door Law prior to any resubmission to the Town Council." (R. 38–39). The minutes submitted with the Defendants' motion state that at its November 1st meeting, the Town Council "vacated" the prior approval of the Memorandum and provided for two subsequent public meetings of the ad hoc committee "to discuss this project as soon as possible." (R. 41). The minutes also state that a meeting of the ad hoc committee was held on November 17th "to hold a public hearing on the proposed [Memorandum] and to solicit public input on the agreement . . . [as] a chance for all citizens to voice their concerns or ask questions about the proposed relationship with the YMCA." (R. 45). During the meeting, a "brief history of the project was then outlined" as follows:

> Eleven years have been spent on the project. In 1991, a community survey was conducted regarding recreational needs in the community. In 1994, it was decided that we need a multi-use Aquatic Center for the town. In 1995, a suitable site was identified. In 1996, the YMCA selected Fishers as the location for their next branch. In 1999, Fishers Town Council passed a resolution identifying need for a facility. All action was taken in a public forum with public input over an extended period of time. On October 18, 1999 [Memorandum] was passed by the Fishers Town Council in open session and was subsequently vacated on November 1, 1999.

*Id.* The public was then invited to ask questions or make comments.

The minutes further state that a meeting of the ad hoc committee was held on November 22nd in which more comments were made, questions asked, and an addition was made to the Memorandum regarding appraisal of the land upon which the YMCA would be built. A committee member both "[g]ave a recap of proceedings from other meetings"[3] and "[r]eviewed the steps of [the Memorandum]." (R. 47).

The basic purpose of the Indiana Open Door Law is to ensure that deliberations of public agencies are conducted openly "in order that the citizens may be fully informed." Ind.Code § 5–14–1.5–1. Accordingly, the provisions of the Law "are to be liberally construed with the view of carrying out its policy." *Id.*

In *Town of Merrillville v. Blanco*, 687 N.E.2d 191 (Ind.Ct.App.1998), *trans. denied*, the Board of Metropolitan Police Commissioners ("Board") held two meetings, without notice and without the public present, for the purpose of considering disciplinary action against a Merrillville police officer. The Board then held a public hearing, properly noticed, over the course of three days in which both sides presented a full case to the Board. The Board eventually voted on the charges and

---

3. This committee member's recap appears to have covered the November 17th meeting of the ad hoc committee, as well as a November 12th meeting of the committee that was "improperly noticed." (R. 47).

rendered its decision. We agreed with the trial court's determination that the first two meetings, held without proper notice, violated the Open Door Law. *Id.* at 196. We further held that deficiencies with respect to those meetings were not cured by the subsequent three days of hearings. *Id.* at 198. In so doing, we referenced Ind.Code § 5–14–1.5–7(c), which states that "[i]f a court finds that a governing body of a public agency has violated this chapter, it may not find that the violation was cured by the governing body by only having taken final action at a meeting that complies with this chapter."

In *Turner v. Town of Speedway,* 528 N.E.2d 858 (Ind.Ct.App.1988), the Police Commissioners of Speedway interviewed police officers for promotion to three positions as a uniformed sergeant. The first round of interviews was conducted in the Chief of Police's office. The record does not disclose whether the public attended, and there were no minutes or memoranda of the interview sessions for public inspection. Later, the Commissioners held a private meeting over breakfast to discuss all of the candidates and to reach a tacit agreement concerning who would be promoted. At a subsequent regularly scheduled meeting of the Commission held in conformity with Open Door Law requirements, the Commission formally adopted a resolution regarding the promotions. The trial court concluded that the last meeting cured any Open Door Law violations occurring during the first two meetings, a conclusion with which we disagreed. In reversing the trial court, we stated that compliance with the Open Door Law in the last meeting was not "an umbrella providing sufficient cover to validate the earlier meetings." *Id.* at 862.

The upshot in the present case is that in order to make a prima facie showing that there were no genuine issues of material fact under the Open Door Law, the Defendants were required to show that the ad hoc committee meetings held on November 17th and 22nd cured the committee's past noncompliance with the Law. Applying our holdings in *Blanco* and *Turner,* as well as the language of Ind.Code § 5–14–1.5–7(c), we conclude that Defendants were required to make a prima facie showing that in the November 17th and 22nd meetings Azhar and other citizens were apprised of the information received and other official action taken during the ad hoc committee's private meetings. Our review of the evidence leads us to the conclusion that the Defendants failed to make such a showing. At most, the evidence shows that those who attended the November 17th and 22nd meetings were provided with an opportunity to discuss the propriety of the memorandum; they were not apprised of the official actions that precipitated the document.[4] Accordingly, the trial court erred in granting summary judgment.

## CONCLUSION

The trial court did not cause prejudice to Azhar when it treated the Defendants' motion as a summary judgment motion. The trial court did err, however, in granting summary judgment. We affirm in part and reverse in part. We remand for further proceedings consistent with this opinion.[5]

DARDEN and VAIDIK, JJ., concur.

---

4. We disagree with the Defendants' contention that they precisely followed the Public Access Counselor's advice. We do not read the Public Access Counselor's affidavit as permission to hold additional meetings that failed to provide the required information to the citizens of Fishers.

5. In holding that the Defendants must inform Azhar of the official action taken in the ad hoc committee's prior meetings, we are not requiring the committee to "redo" eleven years of meetings. Furthermore, we note that there may be a limitation on the number of committee meetings that Azhar may challenge under Ind.Code § 5–14–1.5–7(b).