# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2017, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Benjamin D. Fryman
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES

Paula E. Neff
William J. Emerson
Lucas, Holcomb & Medrea LLP
Merrillville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Catholic Diocese of Gary and St. Joseph Catholic School, *Appellants-Defendants,* <br><br> v. <br><br> Douglas N. Crawley and Patricia Crawley, *Appellees-Plaintiffs* | May 31, 2017 <br><br> Court of Appeals Case No. 45A04-1610-PL-2342 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Diane Kavadias Schneider, Judge <br><br> Trial Court Cause No. 45D11-1207-PL-64 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Douglas Crawley was hired by the Catholic Diocese of Gary to work at St. Joseph Catholic School in August 2005. He was hired as a part-time worker but became a full-time employee before the end of 2005. The Diocese offered health-insurance benefits to full-time employees, but Douglas was not made aware that he was eligible. In late 2006 Douglas was hospitalized. At the time, he was listed on his wife's insurance plan. After he was released from the hospital, his wife's insurance company denied payment of Douglas's medical and hospital bills, claiming that Douglas was eligible for health insurance through the Diocese.

[2] A health-care-collection agency sued the Crawleys for payment of Douglas's medical bills, and the Crawleys filed a third-party complaint against the Diocese. The Crawleys asserted four claims: breach of contract, actual fraud, constructive fraud, and violations of the Employment Retirement Income Safety Act (ERISA). Five years later, the Diocese moved for summary judgment. The trial court granted the Diocese's motion only on the ERISA claim. The Diocese was granted an interlocutory appeal and challenges the trial court's denial of summary judgment on the three remaining claims. Concluding that the Diocese was entitled to summary judgment on the remaining claims, we reverse.

# Facts and Procedural History

[3] Douglas began working for the Diocese at St. Joseph Catholic School in August 2005. At the time, Douglas worked part-time and was not eligible for the Diocese's health-insurance plan. Eventually, Douglas began working forty hours or more each week at the school and became a full-time employee eligible for health-insurance coverage. However, Douglas was not informed that he was eligible to participate in the Diocese's plan. Douglas was listed as an insured person through his wife's employer's insurance plan. His wife, Patricia, was employed at St. Catherine Hospital. The hospital's plan required spouses of employees to participate in their own employers' insurance plans, if offered, as the primary insurer and then to use the hospital's insurance as secondary coverage. If coverage was not available to spouses through their employers, then the hospital's plan would serve as the sole insurer for them.

[4] In October 2006, Douglas was hospitalized, and the costs of his medical procedures were billed to St. Catherine Hospital's insurance provider. Six months later, in April 2007, Pat Mason, a human-resources representative with St. Catherine Hospital, contacted the Diocese regarding Douglas's health-insurance coverage. After her conversation with the Diocese, Mason and the hospital's insurer determined that Douglas was, in fact, eligible for insurance through the Diocese. Accordingly, the hospital's insurance provider denied Douglas's claims, and Mason notified the Crawleys that Douglas's claims were denied.

[5] Shortly thereafter, Douglas was approached by the principal of St. Joseph Catholic School. The principal presented Douglas with a form titled "Voluntary Waiver of Health Insurance Benefits." Appellants' App. Vol. III p. 64. The form stipulated that Douglas had been notified that he was eligible for health-insurance coverage through the Diocese but waived that coverage. The form was back-dated to January 3, 2006. Douglas kept the form and never signed it.

[6] The Crawleys were unable to pay Douglas's hospital bills, and in March 2009, a collection agency, Argent Healthcare Financial Services, Inc., filed suit against them. A year later, the Crawleys filed a third-party complaint against the Diocese, alleging four claims: breach of contract, actual fraud, constructive fraud, and ERISA violations. They also sought recovery for their attorney's fees. As part of their fraud allegations, the Crawleys claimed that the Diocese misrepresented that Douglas "was not eligible" for coverage under the Diocese's insurance plan at the time of his hospitalization, when in fact he was eligible at that time. Appellants' App. Vol. II pp. 43-45.

[7] The Diocese later obtained copies of Douglas's unpaid medical bills. It paid out all the claims to "healthcare providers and their assignees for balances owed for medical services provided to Douglas Crawley" for the time that he worked for the Diocese but was not on its health insurance. Appellees' App. Vol. II p. 4. The total amount paid was $48,914.45. *Id.* Argent's suit against the Crawleys was dismissed.

[8] In October 2015, five years after the third-party complaint was filed, the Diocese moved for summary judgment on all claims. In their response to the Diocese's motion, the Crawleys offered the affidavit of Pat Mason, which stated that she spoke with an unidentified employee at the Diocese in April 2007. According to Mason, the Diocese employee informed Mason that Douglas was eligible for health insurance but had declined coverage. The Crawleys contended that the misrepresentation underlying their fraud claims was not that Mason was told that Douglas "was not eligible" for health insurance but that Mason was falsely told that Douglas had declined his health insurance through the Diocese. Appellants' App. Vol. III p. 45 ("The essence of the Crawleys' complaint is that the Diocese falsely represented to *Mrs. Crawley's employer* that Mr. Crawley was offered and declined benefits from the Diocese."). The Diocese responded, stating that the Crawleys introduced a different theory for their fraud claims than what was alleged in their complaint. It argued that this different theory was the exact opposite of what was pled in the Crawleys' complaint. In other words, the complaint alleged that the Diocese had misrepresented that Douglas was not eligible for health insurance, but the Crawleys' response to the motion for summary judgment claimed that the Diocese had misrepresented that Douglas was eligible but had declined coverage.

[9] The trial court granted summary judgment for the Diocese on the ERISA claim because both parties agreed that the Diocese's plan was a "church plan" and not covered by ERISA's provisions. *See id.* at 87; *see also* 29 U.S.C. § 1003(b)(2)

(stating that church plans are not covered under ERISA); 29 U.S.C. § 1002(33)(A) (defining church plan). The court denied the Diocese's motion on the remaining claims, stating that the Diocese had failed to show that no genuine issue of material fact existed. Appellants' App. Vol. III p. 87. The trial court then granted the Diocese's request that this issue be certified for interlocutory appeal. We accepted jurisdiction, and this appeal ensued.

# Discussion and Decision

[10] The Diocese contends that there are no genuine issues of material fact on the remaining claims—breach of contract, actual fraud, and constructive fraud[1]— and that the trial court erred when it did not grant summary judgment in its favor. We review a trial court's summary-judgment decision de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). All reasonable inferences are drawn in favor of the non-moving party. *Id.* "The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law[.]" *Doe v. Adams*, 53 N.E.3d 483, 494 (Ind. Ct. App. 2016), *trans. denied.* If the moving party establishes its prima facie case, "the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine

---

[1] In their response to the Diocese's appeal, the Crawleys introduce three new theories of recovery— counterfeiting, forgery, and insurance fraud. Because the Crawleys did not raise these issues to the trial court, they are waived. *See Celadon Trucking Srvs., Inc. v. Wilmoth*, 70 N.E.3d 883, 840-41 (Ind. Ct. App. 2017).

issue of material fact." *Id.* The party appealing "has the burden of persuading this Court that the grant or denial of summary judgment was erroneous." *Id.*

# I. Breach of Contract

The Crawleys contend that the Diocese had "a contractual obligation to inform" Douglas that he was eligible for health insurance and that the Diocese breached this obligation. Appellants' App. Vol. II p. 46. The Diocese contends that no contract ever existed, and, therefore, the Crawleys' breach-of-contract claim fails. To have a legally binding contract there must be an offer, acceptance, and consideration. *Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind. 2010). If the contract is in writing, Indiana Trial Rule 9.2(A) requires the plaintiff to attach the original or a copy to his pleading.

The only document the Crawleys attached to their third-party complaint is the Anthem Benefit Booklet. *See* Ex. A; Appellant's App. Vol. II pp. 51-136. At the close of discovery, the booklet remained as the only alleged source of a contract. Section five of the booklet discusses eligibility for enrollment in an Anthem health-insurance plan, but it clearly states, "For more specific eligibility information you should see your Human Resources or benefits department." Appellant's App. Vol. II p. 85. The booklet makes no offer of benefits but rather serves as an educational tool; it is not the source of a contract between the Diocese and Douglas.

[13] On appeal, the Crawleys claim that they will "offer evidence at trial to show [the Diocese's] policy provision of health insurance benefits to its employees." Appellees' Br. p. 35. They continue that at trial they will bring "documents, including policies and forms of documentation" to support their claim of breach of contract. *Id.* at 36. But this is precisely why we have summary judgment; it provides the court an opportunity to review the evidence that is to be presented at trial in support of each party's case to determine what, if any, claims proceed to trial. The party moving for summary judgment has the burden to make a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Doe*, 53 N.E.3d at 494. The burden then shifts to the non-moving party "to designate and produce evidence of facts showing the existence of a genuine issue of material fact." *Id*. Regardless of whether the alleged contract was written or oral, the Crawleys must do more than generically state that they will present evidence of a contract at trial. They have failed to meet their burden. We therefore conclude that the trial court erred when it denied summary judgment for the Diocese on the Crawleys' breach-of-contract claim.

## II. Fraud[2]

[14] The Diocese next contends that the Crawleys have failed to prove that there is a genuine issue of material fact as to their claims of actual and constructive fraud.

[2] The Crawleys' complaint asserts claims of actual and constructive fraud. Both claims allege the same set of facts, so we will address these arguments together.

To prevail on a claim of actual fraud (also referred to as common-law fraud), the plaintiff must show:

> (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of.

*Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013). The elements of constructive fraud vary slightly from those of actual fraud:

> (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Sheaff Brock Inv. Advisors, LLC v. Morton*, 7 N.E.3d 278, 288 (Ind. Ct. App. 2014), *trans. denied*.

[15] The Crawleys claimed that the Diocese engaged in fraudulent activity because: (1) the Diocese had a duty to disclose to Douglas that he was eligible for health-insurance benefits; (2) the Diocese attempted to have Douglas sign a back-dated form that waived his health-insurance benefits; and (3) the Diocese told Pat Mason, who worked for St. Catherine Hospital, that Douglas was not eligible for health-insurance benefits. Appellants' App. Vol. II pp. 41-46.

[16]     The Diocese first disputes that it committed fraud by not informing Douglas that he was eligible for health insurance. The Diocese argues that this allegation is a "repackaging" of the breach-of-contract claim. Appellants' Br. p. 20. A plaintiff who brings "both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Sheaff Brock*, 7 N.E.3d at 288.

[17]     This fraud allegation relies on the same facts underlying the breach-of-contract claim: the Diocese owed Douglas a duty to disclose his eligibility for health insurance and failed to make such a disclosure. These allegations amount to a claim for breach of contract and nothing more. *See Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) ("[T]he allegations making up his fraud claim amount to a series of misrepresentations stemming from and about the contract itself. At best, such evidence merely establishes that Ruman and RCH breached the oral contract . . . ."). Additionally, the prayers for relief under these claims are almost verbatim; they seek payment for Douglas's medical services while he worked for the Diocese and was eligible for its insurance plan but was not informed of his eligibility. The Crawleys have not offered any proof as to how they suffered distinct injuries from the alleged fraud. We agree with the Diocese: this fraud allegation is a repackaged version of the breach-of-contract claim. The alleged duty to disclose, if any, would arise from the alleged contractual relationship between the Diocese and Douglas. But, as

already discussed, the Crawleys have failed to present any evidence that a contract existed between Douglas and the Diocese.

[18] The second allegation that the Diocese challenges is that in April 2007, six months after Douglas was hospitalized and a few days after Mason contacted the Diocese regarding Douglas's health-insurance eligibility, the Diocese tried to get him to sign a back-dated form that said he had waived his benefits election in January 2006—after he was employed full-time but before he was hospitalized. But Douglas never signed the form. To establish a prima facie case under both actual and constructive fraud, the Crawleys are required to prove that they relied on a material misrepresentation and that reliance caused them some type of injury. The Crawleys have not satisfied this burden. Douglas's injury—his medical and hospital bills—occurred six months before the Diocese approached him with the back-dated form. The Crawleys cannot claim that they detrimentally relied on the Diocese's request to sign the back-dated form. The Diocese's actions do not amount to actual or constructive fraud.

[19] The Diocese also challenges the Crawleys' third allegation that it fraudulently misrepresented Douglas's benefits eligibility to Pat Mason. The Crawleys present two different theories of what was told to Mason—either Douglas was not eligible for health-insurance coverage, or Douglas waived his coverage. Regardless of the statement that was actually made to Mason, the Diocese did not engage in actual or constructive fraud for the same reasons the back-dated form did not constitute fraud. In her affidavit, Mason stated that she spoke to

the Diocese in April 2007 about Douglas's benefits eligibility. She further stated that based on this conversation, St. Catherine Hospital determined that Douglas was not eligible for health-insurance coverage through the hospital, and his claims from October 2006 were ultimately denied. The Crawleys, again, have failed to establish a prima facie case for actual or constructive fraud. The undisputed facts are clear: Mason did not speak with the Diocese until six months after Douglas's injury. The Crawleys cannot now claim detrimental reliance on a statement made after the medical and hospital bills began accruing. We conclude that the trial court erred when it denied the Diocese's motion for summary judgment on the Crawleys' fraud claims.[3]

Reversed.

Bailey, J., concurs.

Robb, J., concurs in result without opinion.

---

[3] Count I of the Crawleys' complaint was captioned "Claim for Damages." Appellant's App. Vol II. p. 40. Because recovery of damages is contingent upon the breach-of-contract or fraud counts surviving summary judgment, the Diocese is also entitled to summary judgment on Count I.